DANIEL A. CONNER v. JOHN MACKEY, EX'OR, AND ANOTHER.

It is no objection to the taking of depositions, to be read upon the trial, that the defendant had not answered. The defendant has a certain time allowed to answer, but it is his duty to take steps to prepare for trial as soon as he is served with citation.

Where the consideration of the note sued on was money won at a game with cards, called "poker," it was held that the consideration was illegal, on the general ground that gaming with cards tends to immorality.

Error from Colorado. Tried below before the Hon. James H. Bell.

Suit by Daniel A. Conner against John Mackey, executor of W. H. Secrest and R. Autrey, on a note under seal. The case was in this Court, on appeal, at Galveston, 1857, and will be found reported in 18 Tex. R. 427. After it was remanded, the

defendants made affidavit to the truth of the plea impeaching the consideration ; and the case took the same course as upon the former trial, upon substantially the same evidence and same rulings of the Court. The facts are also apparent from the Opinion.

*J. H. Robson*, for plaintiff in error, reviewed the previous decisions of this Court, to show that the playing in this case was not illegal, within the ruling of any case yet decided ; but that it came within the ruling in the case of Wheelock v. The State, 15 Tex. R. 263, where it was held that the playing was not indictable ; and then cited numerous authorities to show that money won at cards was a valid consideration at Common Law.

*G. W. Smith*, for defendants in error, argued that the facts of the playing came within the decisions in Wheelock v. The State, 15 Tex. R. 255 ; Id. 257 ; and further, that the consideration was illegal, on the ground that card playing for money, whether at a public or private place, tended to immorality, and was against public policy.

WHEELER, J. It is no objection to the taking of depositions, to be read upon the trial, that the defendant has not answered. He is allowed time to file his answer; but as he may be required to proceed to trial immediately after having answered, it is proper, and may be necessary, that he take steps in advance to obtain his evidence. His failure to do so, when he might have obtained it, would deprive him of the right to a continuance. (16 Tex. R. 656.)

It indisputably appears by the evidence that the consideration of the note sued on was money won at a game with cards, called poker ; and the question is, whether a contract founded upon such a consideration is valid.

It is undeniable that by the Common Law of England wagers were not *per se* void, unless they affected the feelings, interests or character of third persons, or led to indecent evidence, or were contrary to public policy, or tended to immorality or to a breach of some law. Such were the English decisions. A few early decisions in America, it is said, inclined the same way. But a different view was taken in many of the States, and all wagers were considered to be illegal and contrary to good policy. All

wagers are now forbidden in England by statute. They are forbidden, also, in some of the States. (2 Parsons on Con. 261, note.)

It is said by a learned annotator, that as the moral sense of the present day regards gaming or wagering contracts as inconsistent with the interests of the community, and at variance with the laws of morality, the exception necessarily tends to become the rule; and it has consequently been held, in some of the States, that all contracts of wager are void. In some of the others the question is treated as open in theory, although a recovery is seldom or never permitted in practice; and there are but few where wagers stand on the footing of the Common Law, and are unquestionably good, unless some special ground is shown for treating them differently. (2 Smith's Leading Cases, notes to 4th Am. edit. 263.) The great weight of authority, at the present day, unquestionably is in favor of holding all wagering contracts as illegal and contrary to good policy. (Rue v. Gist, 1 Strobhart, 82; 6 Whart. 179; 16 Ohio, 54; 1 Iowa, 383; 3 N. H. 155; 6 Id. 104.)

Wagers upon a horse-race have been sustained by this Court, upon the doctrine of the Common Law; but they have been considered as resting upon somewhat different grounds, as respects their policy, from other wagers.

In the present case, the contract might have been declared illegal upon the ground that the playing was at a public place within the prohibition of the statute. Although called by some of the witnesses a private residence, the evidence abundantly shows that it was a place of common resort for the purpose of gaming, and was, in fact, for the time, a common gaming house; and upon the evidence in this case the parties concerned in the gaming might have been convicted upon an indictment under the statute. (Wheelock v. The State, 15 Tex. R. 257.) The charge of the Court, however, placed it upon the ground that the contract was contrary to good morals and policy; and it is undoubtedly supported by the great weight of authority in this country. The case of Norvell v. Oury (13 Tex. R. 31) is an authority for holding that a note given for money won at cards is void by our law. The charge of the Court was, that if the consideration of the note sued on was money lost in "a gaming affair," the jury should find a verdict for the defendant, no matter where it occurred; which the jury accordingly did, and this Court affirmed the judgment, waiving, as unnecessary, the expression of any opinion whether a contract founded on a gambling consideration,

but entered into in a State where it was lawful and valid, could be enforced in the Courts of this State. The consideration of the note was undoubtedly a gambling consideration, whether the gaming was at a public or private place; and the case just cited is an authority for holding the contract illegal and void by our law. The judgment is affirmed.

Judgment affirmed.